Yongmoon Kim, Esq.
ykim@kimlf.com
Nick B. Gagua, Esq.
ngagua@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOIS KING DELARIA, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>FORSYTHE FINANCE, LLC;<br>NTM FINANCING CORP d/b/a CNAC;<br>TRIBUTE CAPITAL PARTNERS, LLC;<br>COLLECTION ASSOCIATES, LTD; and<br>TSAROUHIS LAW GROUP, LLC,<br><br>Defendants. | Civil Action No. 2:25-cv-18491-ES-JRA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT and JURY DEMAND** |

## I. NATURE OF THE CASE

1. This class action for statutory and actual damages arises from the Defendants' violations of, *inter alia*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.*, the New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J.S.A. 17:11C-1 *et seq.*, and the Pennsylvania Consumer Credit Code ("PACCC"), 12 Pa.C.S. § 6101 to 6275.

2. As described more fully below, Defendants violated the FDCPA, CFA, NJCFLA, and Pennsylvania statutes against Plaintiff and other similarly situated consumers by

attempting to collect on a consumer debt arising from an automotive transaction despite lacking required licenses under both New Jersey and Pennsylvania law, thereby rendering the debt unenforceable and their collection efforts unlawful. Specifically, Defendants Forsythe Finance, LLC, NTM Financing Corp d/b/a CNAC, and Tribute Capital Partners, LLC failed to obtain and maintain proper consumer lender and sales finance company licenses in New Jersey and Pennsylvania as required by law.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1367.

4. Venue in this action properly lies in the District of New Jersey because Plaintiff Lois King Delaria resides in Sussex County, New Jersey, and Defendants regularly conduct business in this district by engaging in debt collection activities against New Jersey consumers.

## III. PARTIES

5. Plaintiff Lois King Delaria ("Delaria") is a natural person residing in Sussex County, New Jersey.

6. At all times relevant to this lawsuit, Delaria was a citizen of the State of New Jersey.

7. Defendant Forsythe Finance, LLC ("Forsythe") is a Wisconsin limited liability company with its principal place of business located at 225 S. Executive Drive, Brookfield, Wisconsin 53005.

8. Forsythe is a debt buyer and debt collector that purchases defaulted consumer debts and attempts to collect such debts through litigation and other means.

9. Forsythe is licensed as a sales finance company in Pennsylvania but is not

licensed under the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1 *et seq*.

10. Collection Associates, Ltd. ("CAL") is a debt collection agency and receivables management firm operating out of 225 South Executive Drive, Suite 250, Brookfield, Wisconsin 53005.

11. Upon information and belief, CAL manages all of the debts allegedly owned by Forsythe including managing the collection of said debts.

12. Defendant NTM Financing Corp d/b/a CNAC ("NTM") is the original creditor that extended automobile financing to Delaria through a retail installment contract dated September 28, 2017.

13. NTM has addresses at 2460 Freemansburg Avenue, Easton, Pennsylvania 18042 and 110 North Courtland Street, East Stroudsburg, Pennsylvania 18301.

14. NTM is licensed as a sales finance company in Pennsylvania but is not licensed under the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1 *et seq*.

15. Defendant Tribute Capital Partners, LLC ("Tribute") is a debt buyer that purchased the subject debt from NTM and subsequently resold it to Forsythe.

16. Tribute is not licensed as a sales finance company or consumer lender in either New Jersey or Pennsylvania.

17. Defendant Tsarouhis Law Group, LLC ("Tsarouhis Law Group" or "Tsarouhis") is a debt collection law firm with a principal place of business located at 21 South Ninth Street, Suite 200, Allentown, Pennsylvania 18102.

18. Tsarouhis Law Group files collection lawsuits on behalf of debt buyers, including Forsythe, in New Jersey and Pennsylvania courts.

19. As such, Tsarouhis Law Group is a debt collector as defined by 15 U.S.C. §

1692a(6) of the FDCPA, as held by the U.S. Supreme Court in *Heintz v. Jenkins*, 514 U.S. 291 (1995).

20. In this pleading, "Collection Defendants" in the plural refers to Tribute, CAL, Forsythe, and Tsarouhis.

21. Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendant that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendant and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

22. Some or all of John Does 1-10 set the policies and practices complained of herein.

23. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

24. In this pleading, "Defendants" in the plural refers to all Defendants.

## IV. FACTUAL ALLEGATIONS

### A. Allegations regarding Defendants' practices generally

25. Collection Defendants are in the business of purchasing and enforcing defaulted consumer debts arising from automobile financing transactions.

26. Collection Defendants purchase past-due and defaulted consumer automobile

financing accounts for pennies on the dollar and then attempt to collect those accounts through litigation and other collection activities.

27. In the course of their business, Collection Defendants have purchased and taken assignment of numerous defaulted accounts originally extended by automobile dealers and finance companies to consumers in New Jersey and Pennsylvania.

28. All or substantially all of the accounts of which Collection Defendants took assignment extended credit in amounts less than $50,000 and were subject to licensing requirements under both the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1, *et seq*., and the Pennsylvania Consumer Credit Code, 12 Pa.C.S. § 6101, *et seq*.

29. Under New Jersey law, any person directly or indirectly engaging in the business of buying, discounting or endorsing notes, or of furnishing or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business and must be licensed under the NJCFLA. N.J.S.A. 17:11C-3.

30. Under Pennsylvania law, "Holder" is defined in 12 Pa.C.S. § 6202 as "[a]n installment seller or a sales finance company with the rights of the installment seller under the installment sale contract."

31. Under Pennsylvania law, "Sales finance company" is defined in 12 Pa.C.S. § 6202 as "[a] person in the business of acquiring, investing in or lending money or credit on the security of an installment sale contract or any interest in the contract, whether by discount, purchase or assignment of the contract, or otherwise."

32. The PACCC, in 12 Pa.C.S. § 6236, provides:

> (a) When obligation unenforceable. — An obligation of the buyer of a motor vehicle under an installment sale contract that was consummated in this Commonwealth is not enforceable in this Commonwealth if:

> . . . .
>
> (2) the holder was not licensed under this chapter when the holder acquired the contract.

33. In the course of their business, Collection Defendants have enforced their assigned accounts against New Jersey consumers through collection letters, lawsuits in New Jersey courts, and post-judgment collection efforts.

34. Collection Defendants used the mails, telephone, the internet and other instruments of interstate commerce when attempting to collect debts.

**B. The Original Transaction and Delaria's Automobile Financing**

35. On September 28, 2017, Lois King Delaria entered into an automobile financing transaction with North Courtland Auto Sales d/b/a J.D. Byrider-PA110, located at 2460 Freemansburg Avenue, Easton, Pennsylvania 18042.

36. Ms. Delaria purchased a 2009 Dodge Grand Caravan, with approximately 123,654 miles.

37. The transaction was financed by NTM Financing Corp d/b/a CNAC through a Pennsylvania Retail Installment Contract and Security Agreement dated September 28, 2017.

38. The terms of the transaction were as follows:

a. Cash Price of Vehicle: $11,295.00
b. Service Contract: $1,695.00
d. Title Fee: $85.00
e. Registration Fee: $71.50
f. Documentary Fee: $112.00
h. Down Payment: $1,425.00 (consisting of $1,225.00 cash and $200.00 trade-in allowance for a 2002 Ford F150)
i. Amount Financed: $12,726.56
j. Annual Percentage Rate: 21.000%
k. Finance Charge: $5,976.52
l. Total of Payments: $18,703.08

m. Payment Terms: 99 bi-weekly payments of $188.92 beginning December 15, 2017

39. The retail installment contract contained a choice of law provision stating: "LAW GOVERNING: The law of Pennsylvania will govern this transaction."

40. The purpose of the loan and use of the Vehicle which secured the loan was primarily for personal, household, or family purposes.

41. Under New Jersey and Pennsylvania law, the collateral for the secured loan was consumer goods and the transaction was a consumer goods transaction.

42. The debt alleged to be owed by Delaria was incurred for personal, family, or household purposes.

**C. Default, Repossession, and Deficiency**

43. The terms of the contract required Ms. Delaria to make bi-weekly payments of $188.92 beginning December 15, 2017.

44. Due to unforeseen financial hardships due to a death in her family, Ms. Delaria was unable to continue making payments on the automobile loan and had no choice but to voluntarily return the car.

45. Ms. Delaria made her last payment on August 14, 2019. Therefore, default occurred in September of 2019.

46. On or about September 5, 2019, NTM mailed a notice to Ms. Delaria entitled "NOTICE OF DISPOSITION AND OUR PLAN TO SELL PROPERTY."

47. The Notice of Disposition provided Ms. Delaria with a right to redeem the Vehicle within 15 days by paying $566.76 in past due payments.

48. The Notice of Disposition stated that NTM would sell the Vehicle at private sale sometime after September 21, 2019.

49. On December 27, 2019, NTM sold the Vehicle through ACV Auctionsto Nugent Auto Sales for $1,100.00.

50. ACV Auctions charged seller fees totaling $150.00, resulting in net proceeds of $950.00 applied to Ms. Delaria's account.

51. NTM incurred repair expenses of $76.96 in connection with the repossession.

52. According to NTM's internal accounting, as of February 1, 2020, Ms. Delaria allegedly owed $9,199.69.

53. After applying the net sale proceeds of $950.00 and repair expenses of $76.96, NTM calculated a deficiency of $8,326.65.

54. On or about February 1, 2020, NTM sent Ms. Delaria an "Explanation of Calculation of Surplus or Deficiency" stating that she owed a deficiency of $8,326.65.

55. The alleged deficiency balance is $7,759.89 more than the amount that NTM advised Ms. Delaria she could redeem the Vehicle for just four months earlier in the Notice of Disposition.

**D. Assignment Chain and Licensing Violations**

56. Sometime prior to August 23, 2023, and in a series of transactions, NTM Financing Corp d/b/a CNAC assigned the debt to Tribute Capital Partners, LLC.

57. The assignment from NTM to Tribute was documented by a Bill of Sale dated August 16, 2023.

58. By purchasing and taking assignment of the debt, Tribute acted as a "sales finance company" as defined at N.J.S.A. 17:16C-1(f) and 12 Pa.C.S. § 6202.

59. Tribute was not licensed as a sales finance company or consumer lender under the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1, *et seq*.

60. Tribute was not licensed as a sales finance company under the Pennsylvania Consumer Credit Code, 12 Pa.C.S. § 6101 *et seq*.

61. “No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act.” N.J.S.A. 17:11C-3.

62. Tribute is not permitted to engage in the “consumer loan business” or as a “sales finance company” since it did not first obtain a license pursuant to the NJCFLA or the PACCC.

63. The purchase by Tribute was void as of the date Tribute took assignment of the debt, pursuant to N.J.S.A. 17:11C-33(b), which provides: “A contract of a loan not invalid for any other reason . . . shall be void and the lender shall have no right to collect or receive any principal, interest or charges . . . .”

64. Similarly, under Pennsylvania law, the purchase by Tribute was void because an obligation under an installment sale contract “is not enforceable in this Commonwealth if . . . the holder was not licensed under this chapter when the holder acquired the contract.” 12 Pa.C.S. § 6236(a)(2).

65. Thereafter, Tribute, through a Bill of Sale dated August 23, 2023, assigned the debt to Forsythe Finance, LLC.

66. The Bill of Sale from Tribute to Forsythe was executed pursuant to an Accounts Purchase Agreement dated August 23, 2023.

67. However, the purchase by Forsythe was void as a matter of law because the debt became void as of the date Tribute took assignment of the debt without proper licensing.

68. While Forsythe is licensed as a sales finance company in Pennsylvania, Forsythe is not licensed under the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1, *et seq*.

69. Because the debt passed through the unlicensed hands of Tribute, the debt became void and unenforceable, and Forsythe could not acquire valid rights to enforce the debt against Ms. Delaria.

70. NTM is licensed as a sales finance company in Pennsylvania but is not licensed under the New Jersey Consumer Finance Licensing Act.

71. Although the original transaction occurred in Pennsylvania, the subsequent collection activities were directed at Ms. Delaria in New Jersey, requiring compliance with New Jersey licensing requirements.

72. Defendants' enforcement of the debt was unauthorized and unlawful because the debt was void since Tribute did not have a license to engage in business as a "sales finance company" or a "consumer lender" pursuant to the NJCFLA and the PACCC.

73. The debt was void upon alleged assignment to Forsythe, pursuant to N.J.S.A. 17:11C-33(b).

**E. Collection Activities and State Court Litigation**

74. On December 10, 2024, Forsythe Finance, LLC, through its attorneys Tsarouhis Law Group, LLC, filed a collection lawsuit against Ms. Delaria in the Superior Court of New Jersey, Law Division, Special Civil Part, Sussex County, captioned *Forsythe Finance, LLC as assignee of NTM Finance dba CNAC v. Lois King Delaria*, Docket No. SSX-DC-5812-24.

75. Upon information and belief, CAL directs and manages the collection of all debts owned by Forsythe.

76. The collection lawsuit was filed 5 years, 3 months, and 26 days after Plaintiff's last payment on August 14, 2019.

77. The Statue of Limitations in contracts for sale of goods under Pennsylvania law

is four (4) years from when the cause of action has accrued. *See* 13 Pa.C.S. § 2725.

78. The Statute of Limitations in New Jersey in contracts for sale of goods is also four years.

79. The complaint sought to collect $7,425.66 allegedly owed on the account.

80. At all times relevant hereto, Tsarouhis Law Group acted on behalf of Forsythe in an attempt to collect the debt.

81. At all times relevant hereto, CAL acted on behalf of Forsythe in an attempt to collect the debt.

82. At all times relevant hereto, the acts and omissions of Tsarouhis Law Group were incidental to or taken within the scope of the responsibilities given and authorized by Forsythe.

83. At all times relevant hereto, the acts and omissions of CAL were incidental to or taken within the scope of the responsibilities given and authorized by Forsythe.

84. Collection Defendants prosecuted the collection lawsuit against Ms. Delaria when the debt was void ab initio due to the unlicensed status of entities in the assignment chain.

85. Throughout the state court litigation, Collection Defendants attempted to collect when the statute of limitations expired and debt was void, thereby depriving Ms. Delaria of truthful information and violating the FDCPA, CFA, and other laws.

86. Collection Defendants represented to Ms. Delaria that they were collecting on a valid debt when, in fact, the statute of limitations expired, and when the debt was void and unenforceable.

87. Collection Defendants used false, deceptive, and misleading representations in attempting to collect the debt, including misrepresenting the character, amount, and legal status

of the debt.

88. Collection Defendants attempted to collect amounts not permitted by law, including amounts based on an unenforceable debt and commercially unreasonable charges.

89. Collection Defendants engaged in unfair and unconscionable means to collect the debt by filing a lawsuit to enforce a legally void obligation.

90. Ms. Delaria was forced to retain counsel and incur legal fees and court costs to defend against the unlawful collection action.

91. Collection Defendants utilized the same tactics and strategies when attempting to collect Ms. Delaria's alleged debt as they do with numerous other New Jersey consumers.

**F. Harm to Plaintiff**

92. As a result of Collection Defendants' unlawful collection activities, Plaintiff Delaria experienced emotional damages including stress, anxiety, and embarrassment.

93. Ms. Delaria suffered financial loss including having to pay for attorney's fees and court costs to defend the unlawful collection action.

94. Ms. Delaria was subjected to the burden and expense of litigation based on a void and unenforceable debt.

95. Collection Defendants acted with unclean hands when they took actions in violation of New Jersey and Pennsylvania law and are not entitled to any equitable relief.

**G. Fraud-Specific Facts**

96. Forsythe and CAL, as the owner and collection manager of the subject debt, respectively, had direct knowledge that the debt had passed through the unlicensed hands of Tribute Capital Partners, LLC. The Bills of Sale dated August 16 and August 23, 2023 — in Forsythe's and CAL's possession — reflect Tribute as an intermediate assignee in the chain of

title between NTM and Forsythe. Both Forsythe and CAL knew or should have known at the time of collection that neither Tribute nor Forsythe held a license under the NJCFLA and that the debt was therefore void under N.J.S.A. 17:11C-33(b).

97. Forsythe and CAL directed Tsarouhis Law Group to file a collection lawsuit against Ms. Delaria and, in connection with that directive, furnished TLG with the assignment documents reflecting the chain of title, including the Bills of Sale identifying Tribute as an intermediary assignee. Tsarouhis Law Group, as collection counsel that regularly files collection lawsuits on behalf of Forsythe in New Jersey and Pennsylvania courts, reviewed or had access to these documents as part of its standard due diligence in preparing and filing the state court complaint.

98. On December 10, 2024, TLG filed a collection complaint in the Superior Court of New Jersey, Law Division, Special Civil Part, Sussex County, captioned Forsythe Finance, LLC as assignee of NTM Finance dba CNAC v. Lois King Delaria, Docket No. SSX-DC-5812-24. Through the filing of that complaint, Defendants made the following specific, material misrepresentations to Ms. Delaria and to the court:

a) The complaint's caption — identifying Forsythe as "assignee of NTM Finance dba CNAC" — represented that Forsythe held a valid and enforceable assignment of the debt directly from NTM, concealing that the assignment chain had passed through Tribute, an unlicensed intermediary whose acquisition of the debt rendered it void ab initio under N.J.S.A. 17:11C-33(b) and 12 Pa.C.S. § 6236(a)(2);

b) The complaint sought to collect $7,425.66 from Ms. Delaria, affirmatively representing that amount to be a valid and legally enforceable obligation, when in

fact the debt was void and unenforceable under New Jersey and Pennsylvania law as a result of the unlicensed assignment chain; and

c) The complaint implicitly represented that the debt was timely and within the applicable statute of limitations, when in fact it was filed 5 years, 3 months, and 26 days after Ms. Delaria's last payment of August 14, 2019 — more than one year beyond the four-year limitations period applicable under both 13 Pa.C.S. § 2725 and New Jersey law.

99. At the time the collection complaint was filed, each Defendant possessed actual or constructive knowledge that the representations described in the preceding paragraph were false:

a) Forsythe and CAL knew the debt had passed through Tribute's unlicensed hands, that Forsythe itself was not licensed under the NJCFLA, and that both facts voided the debt under applicable law;

b) Tribute knew that it was not licensed as a sales finance company or consumer lender under the NJCFLA or PACCC at the time it acquired and assigned the debt, and that its unlicensed status voided the obligation; and

c) TLG, as regular collection counsel for Forsythe, had access to the Bills of Sale and assignment documents reflecting Tribute's role as an intermediate assignee; review of those documents against the applicable licensing requirements of the NJCFLA and PACCC would have disclosed that Tribute was unlicensed and that the debt was void — facts equally apparent from the face of the complaint's own timeline, which reflected a filing date more than one year after the expiration of the four-year statute of limitations. Indeed, TLG has faced these issues before and

has direct knowledge of the licensure requirements. *Wyche v. Tsarouhis*, 385 F. Supp. 3d 392 (E.D. Pa. 2019).

100. As a direct and proximate result of Defendants' material misrepresentations that the debt was valid, enforceable, and timely, Ms. Delaria was compelled to retain legal counsel and incur attorney's fees and litigation costs to defend against a void, time-barred collection action. Ms. Delaria also suffered emotional distress, anxiety, and embarrassment as a direct consequence of being sued on a debt that Defendants knew or recklessly disregarded to be void and unenforceable

## V. CLASS ACTION ALLEGATIONS

101. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

102. Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class and a Subclass initially defined as follows:

> **Class**: All natural persons with an address in the State of New Jersey or the Commonwealth of Pennsylvania against whom, beginning December 10, 2019, through and including the final resolution of this case, one or more Defendants attempted to collect on an alleged consumer debt that:
>
> a) originated, assigned or transferred to one or more entities that were not properly licensed under the New Jersey Consumer Finance Licensing Act and/or the Pennsylvania Consumer Credit Code at the time of origination or assignment;
>
> b) was collected through litigation or collection activities in New Jersey by entities that were not properly licensed under the NJCFLA;

c) was collected through litigation or collection activities in Pennsylvania by entities that were not properly licensed under the Pennsylvania; and/or

d) was collected through litigation or collection activities when the statute of limitations expired.

**Subclass**: All members of the Class who were subject to collection activity from December 10, 2024, through and including the final resoltuion of this case.

103. Plaintiff seeks to recover declaratory relief and damages on behalf of the Class and attorney's fees and costs to the extent allowed by law.

104. Plaintiff seeks to recover statutory damages, actual damages, restitution, and attorney's fees costs on behalf of herself and all Subclass members under the claims asserted herein.

105. The Class and Subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

106. There are questions of law and fact common to the members of the Class and Subclass that predominate over questions affecting only individuals, including but not limited to:

A. Whether Defendants are debt collectors under the FDCPA;

B. Whether Defendants violated the FDCPA by collecting on void and unenforceable debts due to licensing violations;

C. Whether Defendants violated the NJCFLA;

D. Whether Defendants violated the Pennsylvania Consumer Credit Code;

E. Whether Defendants violated the CFA;

F. Whether Plaintiff and the Class are entitled to damages.

107. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will

cause an orderly and expeditious administration of the claims of the Class and Subclass and will foster economies of time, effort, and expense by avoiding hundreds of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

108. Plaintiff's claims are typical of the claims of the members of the Class and Subclass.

109. The questions of law and/or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members.

110. Plaintiff does not have interests antagonistic to those of the Class and Subclass.

111. The Class and Subclass, of which Ms. Delaria is a member, are readily identifiable using Defendants' records.

112. Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained competent counsel experienced in the prosecution of consumer litigation and class actions. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

113. The prosecution of separate actions by individual members of the Class and Subclass would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

114. Plaintiff does not anticipate any difficulty in the management of this litigation.

## First Count
## Violations of the Fair Debt Collection Practices Act on behalf of Plaintiff and the Subclass only as to Forsythe Finance, LLC, Collection Associates, Ltd., Tribute Capital Partners, LLC, and Tsarouhis Law Group, LLC

115. Plaintiff repeats and realleges all prior allegations including ¶¶ 1–22, 29–36, 43–115 as if set forth at length herein.

116. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

117. The debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

118. Defendants Forsythe Finance, LLC, Collection Associates, Ltd., Tribute Capital Partners, LLC, and Tsarouhis Law Group, LLC are "debt collectors" as defined by 15 U.S.C. § 1692a(6).

119. The collection lawsuit, collection letters, and other collection activities are "communications" as defined by 15 U.S.C. § 1692a(2).

120. At all times relevant hereto, Defendants actively participated in the collection of the debt allegedly owed by Plaintiff.

121. Defendants violated the FDCPA by attempting to collect on debts that were void and unenforceable due to licensing violations under both the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1 *et seq*., and the Pennsylvania Consumer Credit Code, 12 Pa.C.S. § 6101 *et seq*.

122. By attempting to collect void or time-barred consumer debts, Defendants violated sections 1692d, 1692e (including subsections 1692e(2)(A), 1692e(5), and 1692e(10)), 1692f (including subsection 1692f(1)), and 1692g (including subsection 1692g(a)(1)) of the FDCPA.

123. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading

representations or means in connection with the collection of the debt, including:

a. Falsely representing that Defendants had the legal right to collect the debt when the statute of limitations expired, and the debt was void and unenforceable;

b. Misrepresenting the character, amount, and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A);

c. Falsely representing the character, amount, or legal status of the debt by claiming it was a valid and enforceable obligation in violation of 15 U.S.C. § 1692e(2)(A);

d. Threatening to take legal action that could not legally be taken by filing a collection lawsuit when the statute of limitations expired and was void debt in violation of 15 U.S.C. § 1692e(5); and

e. Using false representations or deceptive means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

124. Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect the debt, including:

f. Attempting to collect amounts not permitted by the agreement or by law by pursuing collection on a void debt in violation of 15 U.S.C. § 1692f(1); and

g. Using unfair and unconscionable means by filing a lawsuit to enforce a legally unenforceable debt.

125. Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

126. Defendants violated 15 U.S.C. § 1692g by failing to provide accurate validation information about a debt they were not legally entitled to collect.

127. The violations of the FDCPA described herein constitute *per se* violations.

128. Based on any one of those violations, Defendants are liable to Plaintiff and the Subclass for actual and statutory damages, and to Plaintiff and the Subclass for actual damages, and to all for attorney's fees and costs under § 1692k(a)(3).

**WHEREFORE**, as to Count One, Lois King Delaria, on behalf of herself and the putative Subclass members, hereby requests a Judgment against Forsythe Finance, LLC, Collection Associates, Ltd., Tribute Capital Partners, LLC, and Tsarouhis Law Group, LLC:

a. An order certifying that the Cause of Action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, including defining the Subclass, defining the Subclass, and appointing Plaintiff as the class representative and the undersigned attorneys as class counsel;

b. An award of statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

c. An award of statutory damages for the Subclass pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

d. An award of actual damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1);

e. An award of actual damages for the Subclass pursuant to 15 U.S.C. § 1692k(a)(1);

f. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3);

g. For declaratory relief;

h. For pre-judgment and post-judgment interest; and

i. For such other and further relief as may be just and proper.

## SECOND COUNT
## Violations of Pennsylvania Consumer Credit Code on behalf of Plaintiff and the Class and only as to Forsythe Finance, LLC, NTM Financing Corp d/b/a CNAC, Collection Associates, Ltd., and Tribute Capital Partners, LLC

129. Plaintiff repeats and realleges all prior allegations including ¶¶ 23–26, 29–36, 43–70 as if set forth at length herein.

130. Under 12 Pa.C.S. § 6236(a), "[a]n obligation of the buyer of a motor vehicle under an installment sale contract that was consummated in this Commonwealth is not enforceable in this Commonwealth if . . . (2) the holder was not licensed under this chapter when the holder acquired the contract."

131. “Holder” is defined in 12 Pa.C.S. § 6202 as “[a]n installment seller or a sales finance company with the rights of the installment seller under the installment sale contract.”

132. “Sales finance company” is defined in 12 Pa.C.S. § 6202 as “[a] person in the business of acquiring, investing in or lending money or credit on the security of an installment sale contract or any interest in the contract, whether by discount, purchase or assignment of the contract, or otherwise.”

133. By purchasing and taking assignment of the debt, Tribute Capital Partners, LLC acted as a “sales finance company” as defined in 12 Pa.C.S. § 6202.

134. Tribute was not licensed under the Pennsylvania Consumer Credit Code at the time it acquired the contract.

135. The retail installment contract is an “installment sale contract” as defined in 12 Pa.C.S. § 6202.

136. Because Tribute was not licensed under Pennsylvania law at the time it acquired the contract, the attempted purchase or assignment of the debt was void ab initio pursuant to 12 Pa.C.S. § 6236(a).

137. Attempts to collect a legally unenforceable debt constitute violations of the FDCPA and state consumer protection laws.

138. Defendants’ attempts to collect on the void debt violated Pennsylvania law and constitute unconscionable commercial practices.

**WHEREFORE**, as to Count Two, Lois King Delaria, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants:

a. A declaratory judgment that the debt is void and unenforceable under Pennsylvania law pursuant to 12 Pa.C.S. § 6236(a);

b. A permanent injunction against Defendants prohibiting them from making any further attempts to enforce Plaintiff’s account or the accounts of Class

members, including an injunction against any attempt to collect upon, enforce or assign the account contracts;

c. All damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

**THIRD COUNT**

**Violations of Pennsylvania UCC Article 9 on behalf of Plaintiff and the Class and only as to Forsythe Finance, LLC, NTM Financing Corp d/b/a CNAC, Collection Associates, Ltd., and Tribute Capital Partners, LLC**

139. Plaintiff repeats and realleges all prior allegations including ¶¶ 30–34, 35–55, 56–73, and 74–83 as if set forth at length herein.

140. The Retail Installment Contract and Security Agreement entered into on September 28, 2017, provided that "The law of Pennsylvania will govern this transaction."

141. The transaction was a consumer goods transaction as defined by Pennsylvania UCC Article 9 because the collateral (the 2009 Dodge Grand Caravan) was purchased primarily for personal, family, or household purposes.

142. The transaction created a security interest in consumer goods governed by Article 9 of the Pennsylvania Uniform Commercial Code, 13 Pa.C.S. § 9101 *et seq*.

143. NTM Financing Corp d/b/a CNAC ("CNAC"), as the assignee and secured party, was required to comply with all provisions of Pennsylvania UCC Article 9 in connection with the repossession, disposition, and enforcement of the security interest.

144. Plaintiff's last payment on the account was on August 14, 2019.

145. Plaintiff defaulted on the automobile loan in or about September 2019 due to unforeseen personal and financial hardships.

146. On September 5, 2019, CNAC sent Plaintiff a "Notice of Disposition and Our Plan to Sell Property" dated September 5, 2019, and mailed September 6, 2019, which was unsigned.

147. Under 13 Pa.C.S. § 9611(b), CNAC was required to send Plaintiff "a reasonable *signed* notification of disposition." (Emphasis added).

148. Under 13 Pa.C.S. § 9625(b), "a person is liable for damages in the amount of any loss caused by a failure to comply with this division. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain or increased costs of alternative financing."

149. Under 13 Pa.C.S. § 9625(c)(1), Plaintiff, as a person who was a debtor at the time of CNAC's failures, may recover damages for losses caused by CNAC's violations of Article 9.

150. Under 13 Pa.C.S. § 9625(c)(2), because this was a consumer goods transaction, Plaintiff may recover statutory damages "in any event" of "an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price."

151. The Finance Charge on the Retail Installment Contract was $5,976.52.

152. The principal amount of the obligation was $12,726.56.

153. The cash price of the Vehicle was $11,295.00.

154. Under § 9625(c)(2), Plaintiff is entitled to minimum statutory damages of either:

a. $7,249.18 (calculated as $5,976.52 in finance charges + 10% of $12,726.56 principal); OR
b. $7,106.02 (calculated as $5,976.52 time price differential + 10% of $11,295.00 cash price)

155. These statutory damages are recoverable "in any event" regardless of whether

Plaintiff can prove actual damages.

156. In addition to statutory damages, Plaintiff suffered actual damages as a result of Defendants' violations, including but not limited to:

c. Emotional distress, anxiety, and financial harm from improper collection activities.

157. CNAC sold and assigned the purported deficiency claim to Tribute Capital Partners, LLC on August 16, 2023.

158. Tribute Capital Partners, LLC subsequently sold and assigned the claim to Forsythe Finance, LLC on August 23, 2023.

159. All assignees of a claim, including Forsythe Finance, LLC, take subject to all claims and defenses that Plaintiff could assert against CNAC, the original secured party and seller of goods.

160. The Federal Trade Commission Holder Rule notice contained in the Retail Installment Contract provides: "Any holder of this Consumer Credit Contract is subject to all claims and defenses which the Buyer could assert against the Seller of goods or services obtained pursuant hereto or with the proceeds hereof."

161. Forsythe Finance, LLC, as the assignee and current purported holder of the claim, takes subject to all defenses and claims that Plaintiff could assert against CNAC.

162. Any attempt by Forsythe Finance, LLC to collect a deficiency arising from CNAC's non-compliant disposition violates Plaintiff's rights and perpetuates the harm caused by CNAC's Article 9 violations.

163. Forsythe Finance, LLC's filing of the Collection Action seeking $7,425.66—a deficiency arising from CNAC's unlawful disposition—constitutes a continuation of the Article 9 violations.

**WHEREFORE**, as to Count Three, Lois King Delaria, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants:

a. A declaratory judgment that the debt is void and unenforceable under Pennsylvania law pursuant to 12 Pa.C.S. § 6236(a);

b. A declaration that Defendants violated Pennsylvania UCC Article 9, specifically 13 Pa.C.S. §§ 9610(b), 9611(b), 9612(a), and 9614(a);

c. A declaration that any deficiency claim arising from the December 27, 2019 disposition is barred, void, and unenforceable due to CNAC's violations of Article 9;

d. Statutory damages in the amount of $7,249.18 (or $7,106.02 in the alternative) pursuant to 13 Pa.C.S. § 9625(c)(2);

e. Actual damages for all losses caused by CNAC's violations of Article 9, including but not limited to loss of the Vehicle, loss of equity, and damages arising from improper collection efforts;

f. Attorney's fees and costs incurred in asserting these claims and defenses;

g. A permanent injunction prohibiting Defendants from any further collection efforts on the purported deficiency;

h. Pre-judgment and post-judgment interest; and

i. Such other and further relief as the Court deems just and equitable.

**FOURTH COUNT**

**Violations of New Jersey Consumer Finance Licensing Act on behalf of Plaintiff and the Class and only as to Forsythe Finance, LLC, NTM Financing Corp d/b/a CNAC, Collection Associates, Ltd., and Tribute Capital Partners, LLC**

164. Plaintiff repeats and realleges all prior allegations including ¶¶ 25–34, 56–73 as if set forth at length herein.

165. N.J.S.A. 17:11C-3 provides: "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

166. Entities engaging in the business of "buying, discounting or endorsing notes" in amounts of $50,000 or less are deemed to be engaging in the consumer loan business per the NJCFLA.

167. By purchasing and taking assignment of the debt, Tribute Capital Partners, LLC and Forsythe Finance, LLC acted as "sales finance company[ies]" or engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-1.

168. Neither Tribute nor Forsythe were licensed pursuant to the NJCFLA at the time they acquired the debt.

169. A violation of section 3 in the collection of a loan voids the loan and precludes any further right to collect pursuant to N.J.S.A. 17:11C-33(b).

170. The debt is void when held by unlicensed assignees.

171. Any judgment arising from a collection action by unlicensed entities is void ab initio.

172. Tribute's and Forsythe's violations of the NJCFLA render the debt void and unenforceable.

**WHEREFORE**, as to Count Four, Lois King Delaria, on behalf of herself and the putative Class and Subclass members, hereby requests a Judgment against Defendants:

a. A declaratory judgment that the debt is void and unenforceable under New Jersey law pursuant to N.J.S.A. 17:11C-33(b);

b. A permanent injunction against Defendants prohibiting them from making any further attempts to enforce Plaintiff's account or the accounts of Class members, including an injunction against any attempt to collect upon, enforce or assign the account contracts;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. All damages;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
## Violations of New Jersey Consumer Fraud Act on behalf of Plaintiff and the Class and only

**as to Defendants Forsythe Finance, LLC, NTM Financing Corp d/b/a CNAC, Collection Associates, Ltd., Tribute Capital Partners, LLC**

173. Plaintiff repeats and realleges all prior allegations including ¶¶ 25–34, 56–73, 74–91, 92–95 as if set forth at length herein.

174. Defendants' violations of the NJCFLA and attempts to collect void debts constitute unconscionable commercial practices in violation of the Consumer Fraud Act at N.J.S.A. 56:8-2.

175. Plaintiff is a consumer who purchased "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

176. Defendants are "person[s]" within the meaning of the CFA at N.J.S.A. 56:8-1.

177. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

178. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

179. Defendants committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2 by:

a. Misrepresenting that they had the legal right to collect the debt when it was void;

b. Filing a civil collection complaint when the statute of limitations expired and the debt was void;

c. Demanding payments on a void account and when the statute of limitations expired;

d. Representing, explicitly or impliedly, in the collection complaint and related

communications that the collection complaint could be properly filed and maintained when the debt was unenforceable; and

e. Misrepresenting the character, amount, and legal status of the debt.

180. As a result of Defendants' unlawful actions and violations of the CFA, Plaintiff suffered ascertainable loss(es) including legal fees, costs, and emotional distress.

181. As a result of Defendants' unlawful actions, Plaintiff suffered ascertainable loss from Defendants' CFA violations, entitling Plaintiff to treble damages and equitable relief under the CFA, at N.J.S.A. 56:8-19.

182. Plaintiff therefore has standing to seek injunctive and other equitable relief under the CFA.

**WHEREFORE**, as to Count Five, Lois King Delaria, on behalf of herself and the putative Class and Subclass members, hereby requests a Judgment against Defendants:

a. Awarding treble damages to Plaintiff and the Class under the CFA, at N.J.S.A. 56:8-19;

b. Granting a permanent injunction against Defendants, pursuant to the CFA, at N.J.S.A. 56:8-8, prohibiting them from making any further attempts to enforce Plaintiff's account or the accounts of Class members, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection action on the accounts;

c. Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## SIXTH COUNT
## Unjust Enrichment/Restitution on behalf of Plaintiff and the Class Against All Defendants

183. This Count is brought against all Defendants. Forsythe and CAL, as debt owner and collection manager, directed and authorized the filing of the collection lawsuit. TLG, as collection counsel, filed the lawsuit on Forsythe's behalf. Tribute, as unlicensed intermediate

assignee, caused the debt to become void.

184. Plaintiff repeats and realleges all prior allegations including ¶¶ 1–24, 56–73, 74–91, 92–95, and 96–100 as set forth herein.

185. Defendants have been unjustly enriched by funds collected from the Subclass on void debts.

186. Upon information and belief, Tsarouhis Law Group received compensation from Forsythe and/or CAL in connection with filing and prosecuting the collection lawsuit against Ms. Delaria, which compensation was derived from the attempted collection of a void and unenforceable debt. Tsarouhis Law Group's retention of such compensation constitutes unjust enrichment.

187. The funds conferred a benefit on Defendants.

188. Defendants know that they have received a benefit by receiving the funds.

189. Defendants' retention of these benefits based on unlawful debt collection practices would be unjust.

190. Defendants should be ordered to disgorge or provide restitution to the Subclass.

191. The disgorgement or restitution should include any profits or other benefits enjoyed by Defendants as a result of receiving and using the Subclass's funds.

**WHEREFORE**, as to Count Six, Lois King Delaria, on behalf of herself and the putative Class members, hereby requests a Judgment against Defendants:

a. Granting class certification of the Subclass under Rule 23 of the Federal Rules of Civil Procedure;

b. A money judgment for restitution or disgorgement of all amounts collected by Defendants from the Subclass including any profits or other benefit enjoyed by Defendants as a result of receiving and using the funds from them;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

### SEVENTH COUNT
### Fraud against All Defendants

192. This Count is brought against all Defendants. Forsythe and CAL, as debt owner and collection manager, directed and authorized the filing of the collection lawsuit. TLG, as collection counsel, filed the lawsuit on Forsythe's behalf. Tribute, as unlicensed intermediate assignee, caused the debt to become void.

193. Plaintiff repeats and realleges all prior allegations including ¶¶ 1–24, 56–73, 74–91, 92–95, and 96–100 as set forth herein.

194. By taking possession of Plaintiff's alleged account and attempting collection of the same, Defendants made material misrepresentations that they had the legal right to possess and collect the alleged debt when they did not.

a. The specific misrepresentations made, the date and forum of those misrepresentations, and each Defendant's knowledge thereof are set forth with particularity in ¶¶ 96–100 above, and are incorporated herein by reference.

195. By taking possession of the alleged account and attempting collection of the same, Defendants made material misrepresentations to Plaintiff that the debt was valid when the debt was void and the applicable statute of limitations had expired.

196. By taking possession of Plaintiff's alleged account and attempting collection of the same, Defendants made material misrepresentations to Plaintiff that Defendants were the lawful creditor when they were not.

197. At the time each Defendant took possession of Plaintiff's alleged account and filed or directed the filing of the collection lawsuit, each Defendant knew, or acted in reckless disregard of the fact, that the debt was void and the applicable statute of limitations had expired.

198. In attempting to enforce and/or collect Plaintiff's alleged debt, Defendants intended that Plaintiff should rely on their material misrepresentations that Defendants had the legal right to possess and collect on Plaintiff's alleged account.

199. Plaintiff reasonably relied on Defendants' material misrepresentations that they were legally allowed to attempt enforcement of Plaintiff's alleged debt.

200. Plaintiff has been damaged as a result of her reasonable reliance on Defendants' misrepresentations that they had the legal right to attempt collection of Plaintiff's alleged debt when they did not.

201. As a direct result of Defendants' misrepresentations, Plaintiff was required to retain counsel, incur attorney's fees, and expend time and resources to defend a void debt collection action.

**WHEREFORE**, as to Count Seven, Plaintiff, hereby requests a Judgment against Defendants,

a. A money judgment for compensatory damages based on Defendants' material misrepresentations and Plaintiff's resulting reliance and damages;

b. A money judgment for punitive damages based on Defendants' material misrepresentations and Plaintiff's resulting reliance and damages;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

## EIGHTH COUNT
## Fraudulent Inducement against All Defendants

202. This Count is brought against all Defendants. Forsythe and CAL, as debt owner and collection manager, directed and authorized the filing of the collection lawsuit. TLG, as collection counsel, filed the lawsuit on Forsythe's behalf. Tribute, as unlicensed intermediate

assignee, caused the debt to become void.

203. Plaintiff repeats and realleges all prior allegations including ¶¶ 1–24, 56–73, 74–91, 92–95, and 96–100 as set forth herein.

204. By taking possession of Plaintiff's alleged account and attempting collection of the same, Defendants made a material misrepresentation of a presently existing fact to Plaintiff that they had the legal right to possess and collect Plaintiff's alleged debt when they did not.

205. "At the time Forsythe, CAL, Tribute, and NTM took possession of and managed Plaintiff's alleged account, and at the time Forsythe, CAL, and TLG filed and prosecuted the collection lawsuit on December 10, 2024, each Defendant knew that the debt was void and the applicable statute of limitations had expired.

206. In attempting to enforce and/or collect Plaintiff's alleged debt, Defendants intended that Plaintiff should rely on their material misrepresentations that Defendants had the legal right to possess and collect Plaintiff's alleged account.

207. Plaintiff reasonably relied on Defendants' material misrepresentations that they were legally allowed to attempt enforcement of Plaintiff's alleged debt to her detriment.

208. As a direct result of Defendants' misrepresentations, Plaintiff was required to retain counsel, incur attorney's fees, and expend time and resources to defend a void debt collection action.

**WHEREFORE**, as to Count Eight, Plaintiff hereby requests a Judgment against Defendants,

a. A money judgment for compensatory damages based on Defendants' false misrepresentations and Plaintiff's resulting reliance and damages;

b. A money judgment for punitive damages based on Defendants' false misrepresentations and Plaintiff's resulting reliance and damages;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial by jury.

## VIII. CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, EXCEPT the case styled *Forsythe Finance, LLC v. Lois King Delaria*, SSX-DC-5812-24 (N.J. Super. Ct. Law Div. Sussex County), which was voluntarily dismissed without prejudice on August 29, 2025.

I further certify that I know of no other related cases or parties who should be joined in this action at this time.

Dated: April 9, 2026

KIM LAW FIRM LLC

*s/Yongmoon Kim*
Yongmoon Kim
*Attorneys for Plaintiff*